**IN THE UNITED STATED DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BREWSTER McCAULEY, as Special Administrator of the Estate of Mersaides McCauley, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 09 C 2604 |
| v. | ) ) | |
| CITY OF CHICAGO, et al., | ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On February 13, 2009, Plaintiff Brewster McCauley, as a special administrator of the Estate of Mersaides McCauley, filed the present action in the Circuit Court of Cook County, Illinois, Law Division, against Defendants City of Chicago, the Illinois Department of Corrections ("IDOC"), various IDOC officers, and the Estate of Glenford J. Martinez. After Plaintiff filed his fourteen-count Second Amended Complaint at Law, which added alleged violations of the United States Constitution, Defendants removed Plaintiff's Second Amended Complaint to federal district court on April 29, 2009. *See* 28 U.S.C. §§ 1441(b), (c), 1446.

Before the Court are the IDOC Defendants' and the City's motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6). For the following reasons, the Court grants in part the City's and IDOC's motions to dismiss. Because the Court dismisses Plaintiff's constitutional claims with prejudice, the Court does not have original jurisdiction, and thus declines to exercise its supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3). Therefore, the Court remands Plaintiff's state law claims to the Circuit Court of

Cook County, Law Division, and dismisses this lawsuit in its entirety.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009). Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). As the Seventh Circuit recently explained, this "[r]ule reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross,* ___ F.3d ___, 2009 WL 2535731, at *4 (7th Cir. Aug. 20, 2009) (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Also, under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570); *see also Limestone Dev. Corp. v. Village of Lemont, Ill.,* 520 F.3d 797, 803 (7th Cir. 2008) (amount of factual allegations required to state a plausible claim for relief depends on complexity of legal theory). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct.

2197, 2200, 167 L.Ed.2d 1081 (2007).

## BACKGROUND

On May 24, 1993, Glenford J. Martinez was found guilty of murder and attempted murder based on a 1992 drug-related incident and the trial court sentenced him to 28 and 14 years' imprisonment, respectively, to be served concurrently. (R. 1-2, Second Am. Compl. ¶¶ 9, 10.) On or about May 25, 2006, IDOC released Martinez from his incarceration at Lawrence Correctional Center in Sumner, Illinois to mandatory supervised release. (*Id*. ¶ 11.) Martinez's release was contingent upon his participation in anger management counseling. (*Id*.) Martinez's discharge date from his mandatory supervised release was set for May 25, 2009. (*Id*. ¶ 12.)

On November 3, 2007, Martinez, an ex-boyfriend of decedent Mersaides McCauley, physically abused McCauley by choking her until she lost consciousness. (*Id*. ¶ 14.) Thereafter, the Chicago Police arrested Martinez for domestic violence battery. (*Id*. ¶ 15.) On November 5, 2007, McCauley obtained an Emergency Order of Protection against Martinez prohibiting him from committing physical abuse, harassment, interference with personal liberty, stalking, and contacting McCauley by any means. (*Id*. ¶ 16.)

On November 7, 2007, the Circuit Court of Cook County issued a subpoena for McCauley to appear in court on November 19, 2007 for Martinez's battery case. (*Id*. ¶ 17.) On November 19, 2007, the Circuit Court entered a Plenary Order of Protection on behalf of McCauley against Martinez, which the court later extended to February 25, 2008. (*Id*. ¶ 18.) After the entry of the Order of Protection, Martinez continued to harass McCauley. (*Id.* ¶ 24.) The Chicago Police, however, never arrested Martinez for violating the Order of Protection, although the police were aware of such violations. (*Id.* ¶ 25.)

3

On December 18, 2007, the Cook County State's Attorney's Office telephoned Martinez's parole officer to inform him of Martinez's November 3, 2007 domestic violence battery charge. (*Id.* ¶ 19.) Likewise, on January 9, 2008, the Cook County State's Attorney's Office contacted Martinez's assigned IDOC parole officer to notify him of the domestic violence battery charge. (*Id.* ¶ 21.) IDOC never issued a parole violation warrant for Martinez's domestic battery that would have mandated Martinez to be held without bail until his trial on the battery charge. (*Id.* ¶¶ 22, 23.)

Meanwhile, on February 25, 2008, Martinez's domestic battery case was to be heard in court, but the judge continued it until April 17, 2008. (*Id.* ¶ 22.) Following a church service on April 6, 2008, McCauley was in her vehicle at the church parking lot with her friend. (*Id.* ¶ 26.) Martinez used his vehicle to block McCauley's vehicle in the parking lot, preventing her from exiting. (*Id.* ¶ 27.) Martinez then shot McCauley several times. (*Id.* ¶ 28.) Shortly thereafter, McCauley was pronounced dead at Northwestern Memorial Hospital due to multiple gunshot wounds. (*Id.* ¶ 29.) Later that evening, Martinez shot and killed himself. (*Id.* ¶ 30.)

## ANALYSIS

I. **Equal Protection and Due Process Claims Against the City – Counts VIII and IX**

    A. **Equal Protection Claim – Count VIII**

In Count VIII of the Second Amended Complaint, Plaintiff alleges that the City's custom, practice, and policy of affording lesser protection to victims of domestic abuse violated decedent's equal protection rights. In its motion to dismiss, the City maintains that Plaintiff has failed to properly allege an equal protection violation because McCauley was not a member of a suspect class and Plaintiff did not allege that McCauley was denied a fundamental right.

"[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 142 L.Ed.2d 1060 (2000) (per curiam) (citations and quotation marks omitted). When deciding whether conduct violates the Equal Protection Clause, the Court first turns to whether the conduct targeted a suspect class or addressed a fundamental right. *See St. John's United Church of Christ v. City of Chicago,* 502 F.3d 616, 637 (7th Cir. 2007). Specifically, a typical "equal protection claim focuses on the denial of a fundamental right or disparate treatment of persons depending on the claimant's suspect classification." *Martin v. Shawano-Gresham Sch. Dist.,* 295 F.3d 701, 712 (7th Cir. 2002); *see also Engquist v. Oregon Dep't of Agric.,* 128 S.Ct. 2146, 2152 (2008) ("equal protection jurisprudence has typically been concerned with governmental classifications that 'affect some groups of citizens differently than others.'") (citation omitted). If a suspect classification or fundamental right is involved, courts determine a plaintiff's equal protection claim under a strict scrutiny test, whereas "other equal protection claims are examined under the deferential rational basis test." *See Martin,* 295 F.3d at 712.

Plaintiff does not argue or allege that McCauley was denied a fundamental right. Instead, Plaintiff contends that McCauley, a female domestic violence victim, was a member of a suspect class. A suspect "class is one 'saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.'" *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 313, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (citation

omitted). Classifications based on sex, race, ancestry, and nationality, for example, are inherently suspect. *See Frontiero v. Richardson,* 411 U.S. 677, 682, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) (plurality); *McLaughlin v. Florida,* 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); *Oyama v. California,* 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (1948).

Although Plaintiff argues that McCauley was a member of a suspect class because she was a female domestic violence victim, Plaintiff fails to support this argument with any legal authority except for the *Murgia* decision in which the Supreme Court held that uniformed police officers over the age of 50 were not a suspect class for equal protection purposes. *See* 427 U.S. at 313. While McCauley's class is certainly sympathetic, Plaintiff must establish that it is suspect. Meanwhile, although the Supreme Court has held that classifications based on sex are inherently suspect, this Court has not found any case law supporting Plaintiff's argument that victims of domestic violence are a suspect class for equal protection purposes. Without any controlling legal authority, the Court cannot conclude that decedent was a member of a suspect class.

The Court thus considers whether Plaintiff has sufficiently alleged an equal protection discrimination claim in the context of the rational basis standard. *See Flying J Inc. v. City of New Haven,* 549 F.3d 538, 546-47 (7th Cir. 2008). "To establish a prima facie case of discrimination under the equal protection clause, [plaintiff is] required to show that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class." *Brown v. Budz,* 398 F.3d 904, 916 (7th Cir. 2005) (citation omitted); *cf. Salas v. Wisconsin Dep't Corr.,* 493 F.3d 913, 926 (7th Cir. 2007) (equal protection standard similar to Title VII burden

6

shifting standard). With respect to membership in a protected class, Plaintiff alleges that "[t]here is no rational basis as to why Defendant affords lesser or no protection to victims of domestic abuse and under an Order of Protection." (Second Am. Compl. ¶ 122.) The terms "suspect class" and "protected class" are often used synonymously, *see McDorman v. Smith*, No. 05 C 0448, 2005 WL 1869683, at *5 (N.D. Ill. Aug. 2, 2005), and, as discussed above, victims of domestic violence do not meet any such definition. In fact, Plaintiff fails to set forth any legal authority supporting the assertion that victims of domestic violence – with or without protective orders – are a protected class.

Therefore, the Court turns to whether Plaintiff's equal protection claim is based on membership in a "class of one." *See Olech,* 528 U.S. at 564. "These are cases in which the plaintiff does not claim to be a member of a class that the defendant discriminates against, but argues only that he is being treated arbitrarily worse than some one or ones identically situated to him." *Lauth v. McCollum,* 424 F.3d 631, 633 (7th Cir. 2005). "A class-of-one equal protection claim is cognizable where an individual alleges that he has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *United States v. Moore,* 543 F.3d 891, 896 (7th Cir. 2008) (quoting *Olech*, 528 U.S. at 564). In short, "a class-of-one equal protection challenge asserts that an individual has been 'irrationally singled out,' without regard for any group affiliation, for discriminatory treatment." *Moore,* 543 F.3d at 896.

Here, Plaintiff has failed to allege that McCauley was "intentionally treated differently from others similarly situated." *Olech,* 528 U.S. at 564; *see also Vision Church v. Village of Long Grove,* 468 F.3d 975, 1002 (7th Cir. 2006). In fact, Plaintiff alleges that the City

7

intentionally treated all victims of domestic abuse differently – not just McCauley. (Second Am. Compl. ¶¶ 121, 122.) But, as discussed, a class of one plaintiff must ultimately establish that the state irrationally singled her out without regard to her group affiliation. *See Olech,* 528 U.S. at 564; *Moore,* 543 F.3d at 896. Accordingly, Plaintiff has pleaded himself out of court as to any class of one claim by alleging that the City discriminated against McCauley based on her group affiliation. *See Tamayo v. Blagojevich,* 526 F.3d 1074, 1086 (7th Cir. 2008) (a "party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims"). The Court thereby grants the City's motion to dismiss Plaintiff's equal protection claim and dismisses Count VIII with prejudice.

### B. Due Process Claim – Count IX

Plaintiff also alleges a substantive due process claim against the City in Count IX of the Second Amended Complaint. "The Due Process Clause of the Fourteenth Amendment places a limitation on the state's power to act; however, it generally does not impose upon the state a duty to protect individuals from harm by private actors." *Buchanan-Moore v. County of Milwaukee,* 570 F.3d 824, 827 (7th Cir. 2009). The purpose of substantive due process is "to protect the people from the State, not to ensure that the State protect[s] them from each other." *DeShaney v. Winnebago County Dep't of Social Serv.,* 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *see also Sandage v. Board of Comm'rs of Vanderburgh County,* 548 F.3d 595, 596 (7th Cir. 2008) ("There is no federal constitutional right to be protected by the government against private violence in which the government is not complicit.").

An exception to the general rule that substantive due process does not impose a duty on the state to protect individuals from harm by private actors is when the state has a "special

relationship" with the individual because he is in state custody. *See King v. East St. Louis Sch. Dist. 189,* 496 F.3d 812, 818 (7th Cir. 2007) (citing *DeShaney*, 489 U.S. at 199-20). Seventh Circuit cases have also inferred from *DeShaney* that the Due Process Clause imposes a duty on the state to protect individuals from danger that the state created. *See King,* 496 F.3d at 817; *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998) ("liability exists when the state 'affirmatively places a particular individual in a position of danger the individual would not otherwise have faced.'") (citation omitted).[1] Under the second exception, for "the Due Process Clause to impose upon the state the duty to protect its citizens, the state, ***by its affirmative acts***, must create or increase a danger faced by an individual." *Buchanan-Moore,* 570 F.3d at 827 (emphasis added). As the Seventh Circuit explains, "[w]hen courts speak of the state's 'increasing' the danger of private violence, they mean the state did something that turned a potential danger into an actual one, rather than that it just stood by and did nothing to prevent private violence." *Sandage,* 548 F.3d at 600.

Here, Plaintiff argues "that Defendants' alleged failures to protect McCauley (in light of their knowledge of Martinez) rendered McCauley more vulnerable to the danger that ultimately befell her." (R. 26-1, Pl.'s Resp., at 12.) Plaintiff bases this argument on the factual allegation that the Chicago Police never arrested Martinez for violating the Order of Protection even though the police knew that Martinez had violated the order. (*Id*. ¶ 25.) In essence, Plaintiff is arguing that because the Chicago Police did not arrest Martinez for violating the Order of Protection, the

---

[1] The Seventh Circuit has disapproved of the term "special relationship" as used in the first exception and recognizes that these two classes of cases are functionally the same, for "in both classes of case the victim is safe before the state intervenes and unsafe afterward." *Sandage v. Board of Comm'rs of Vanderburgh County,* 548 F.3d 595, 598 (7th Cir. 2008).

City increased the danger that Martinez would eventually kill McCauley.

Plaintiff's allegations fall into the category of cases that the *Sandage* decision warns against, namely, cases that require the interpretation of "increasing a danger" so broadly that the important distinction between endangering and failing to protect is erased. *See id*. at 597, 599 ("while there's no federal constitutional duty to protect or to rescue from a peril that the government did not create, there is a duty not to harm."). Specifically, if "all that were required was a causal relation between inaction and harm, the rule of *DeShaney* would be undone." *Id.* Like *DeShaney,* where the plaintiff's claim was premised on the state's failure to remove a child from his father's custody after reports of child abuse, Plaintiff's claim is based on the Chicago Police Department's failure to arrest Martinez after Martinez violated the Order of Protection. As with *DeShaney*, liability cannot exist because Plaintiff does not allege that the Chicago Police ***affirmatively*** placed McCauley in a position of danger that she would not have otherwise faced. *See Monfils,* 165 F.3d at 516. Instead, Plaintiff alleges that the police department's failure to act caused McCauley's death. Under *DeShaney* and its progeny, any such substantive due process claim must fail. *See Sandage,* 548 F.3d at 597 ("No one has a federal constitutional right to have another person jailed"). The Court thereby grants the City's motion and dismisses Plaintiff's substantive due process claim as alleged in Count IX with prejudice.

## II.   Due Process Claims and Equal Protection Claims Against IDOC Defendants – Counts X, XI, XII, and XIII

Next, the IDOC Defendants argue that Plaintiff cannot maintain his constitutional claims seeking money damages in Counts X, XI, XII, and XIII against IDOC and IDOC's former director, Roger Walker, in his official capacity based on the Eleventh Amendment. Under the Eleventh Amendment, federal courts are prohibited from entertaining lawsuits by private parties

against states and their agencies unless the state unequivocally waives its Eleventh Amendment protections or Congress abrogates the state's Eleventh Amendment immunity. *See Board of Trs. of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001); *Peirick v. IUPUI Athletics Dept.,* 510 F.3d 681, 695 (7th Cir. 2007). In addition, under the Eleventh Amendment, state officials sued in their official capacities are also immune from lawsuits seeking money damages. *See Joseph v. Board of Regents of the Univ. of Wis. Sys.,* 432 F.3d 746, 748 (7th Cir. 2005).[2] Because IDOC has not waived its Eleventh Amendment protections and Congress has not abrogated those protections under the circumstances, Plaintiff's constitutional claims against IDOC and Walker in his official capacity must fail. *See Knox v. McGinnis,* 998 F.2d 1405, 1412 (7th Cir. 1993) ("Because the State of Illinois has not consented to being sued in federal court in the statute creating its Department of Corrections, the official capacity claims for damages are barred by the eleventh amendment.") (internal citation omitted).

In response to Defendants' motions to dismiss, Plaintiff requests leave to file a Third Amended Complaint withdrawing the equal protection and due process claims against IDOC as alleged in Counts X and XI and the official capacity allegations against Walker in Counts XII and XIII. Plaintiff further seeks leave to engage in limited discovery regarding Walker's personal involvement in the events occurring during Martinez's supervised release in order to bring equal protection and due process claims against Walker in his individual capacity. *See Grieveson v. Anderson,* 538 F.3d 763, 776 (7th Cir. 2008) ("A plaintiff bringing a civil rights

---

[2] A plaintiff who seeks prospective equitable relief for ongoing violations of federal law may bring a claim against state agencies and officials under the *Ex Parte Young* doctrine. *See Peirick v. IUPUI Athletics Dept.,* 510 F.3d 681, 695 (7th Cir. 2007) (citing *Ex Parte Young,* 209 U.S. 123, 159-60, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). Here, Plaintiff is not seeking any injunctive or equitable relief against IDOC.

action must prove that the defendant personally participated in or caused the unconstitutional actions") (citation omitted). As discussed above, however, Plaintiff's equal protection claim fails because McCauley was not a member of a suspect or protected class and her allegations defeat any equal protection "class of one" claim. Furthermore, any substantive due process claim against Walker in his individual capacity based on IDOC's failure to issue a warrant for Martinez's parole violation would fare no better than Plaintiff's claim against the City because, as discussed in detail above, only affirmative acts can "create or increase a danger faced by an individual." *Buchanan-Moore,* 570 F.3d at 827; *see also Monfils*, 165 F.3d at 516 ("liability exists when the state 'affirmatively places a particular individual in a position of danger the individual would not otherwise have faced.'") (citation omitted). Therefore, the Court denies Plaintiff's request to conduct additional discovery and dismisses Counts XII and XIII with prejudice. Because Plaintiff withdraws the equal protection and due process clause claims against IDOC itself, the Court dismisses Counts X and XI with prejudice, as well.

### III. State Law Claims

Finally, the Court declines to exercise its supplemental jurisdiction over Plaintiff's state law claims as alleged in Counts I, II, III, IV, V, VI, VII, and XIV of the Second Amended Complaint because the Court is dismissing – with prejudice – Plaintiff's claims over which the Court has original jurisdiction, namely, his due process and equal protection rights claims. *See Ross v. Board of Educ. of Twp. High Sch. Dist.*, 486 F.3d 279, 285 (7th Cir. 2007); 28 U.S.C. § 1367(c)(3). As the Seventh Circuit instructs, "[w]hen all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)." *Hansen v. Board of Trs. of Hamilton Se. Sch. Corp.,* 551

F.3d 599, 607 (7th Cir. 2008); *see also Leister v. Dovetail, Inc.,* 546 F.3d 875, 882 (7th Cir. 2008) ("When the federal claim in a case drops out before trial, the presumption is that the district judge will relinquish jurisdiction over any supplemental claim to the state courts."). The Court thereby dismisses Counts I, II, III, IV, V, VI, VII, and XIV of the Second Amended Complaint without prejudice and remands this matter to the Circuit Court of Cook County, Law Division. *See Cadleway Props., Inc. v. Ossian State Bank,* 478 F.3d 767, 769-70 (7th Cir. 2007) (when only "supplemental jurisdiction provides any basis for decision, then remand is presumptively appropriate.").

## CONCLUSION

For these reasons, the Court grants in part Defendants' motions to dismiss and remands Plaintiff's state law claims to the Circuit Court of Cook County.

**Dated:** September 18, 2009

                **ENTERED**

                _____
                **AMY J. ST. EVE**
                **United States District Court Judge**